**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SN LIQUIDATION, INC., *et. al.*, | ) | Case No. 07-11666 (KG) (Jointly Administered) |
| Debtors. | ) | |
| SN LIQUIDATION, INC., *et. al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Adv. Pro. No. 08-50288 (KG) |
| ICON INTERNATIONAL, INC., | ) | |
| Defendant. | ) | **Related Docket No: 2** |

**MEMORANDUM OPINION**[1]

**BY: KEVIN GROSS, UNITED STATES BANKRUPTCY JUDGE**

Before the Court is Debtors' Motion for a Preliminary Injunction [D.I. 2] (the "Motion") to enjoin pending litigation against non-debtor individuals who were members of management. Analysis of the facts and legal standards leads the Court to grant the Motion for the reasons set forth below.

[1] This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052.

**JURISDICTION**

The Court's jurisdiction rests upon 28 U.S.C. §§ 157(b)(1) and 1334(b) and (d). The adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

**THE ADVERSARY PROCEEDINGS**

On June 30, 2006, InPhonic, Inc. ("InPhonic") entered into corporate barter financing agreements with Icon International, Inc. ("Icon"), which obligated InPhonic to repay Icon a minimum principal amount of $4,550,000.00, in two installments. InPhonic defaulted on its obligation and Icon commenced arbitration proceedings. As a result of the arbitration, Icon was awarded $4,997,406.61.

On November 8, 2007 (the "Petition Date"), InPhonic and its related entities ("Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Icon timely filed a proof of claim in the amount of $4,997,406.61 (the "Icon Proof of Claim").

Debtors sold substantially all of their assets to Adeptio INPC Funding, LLC ("Adeptio") pursuant to this Court's Order, entered December 13, 2007 (i) Approving Asset Purchase Agreement and Authorizing the Sale of Assets of Debtors Outside the Ordinary Course of Business, (ii) Authorizing the Sale of Assets Free and Clear of all Liens, Claims, and Encumbrances and Interests, (iii) Authorizing the Assumption and Sale and Assignment of Certain Executory Contracts and Unexpired Leases and (iv) Granting Related Relief (the

"Sale Order") (D.I. 250).[2] The Debtors therefore have no business to reorganize, no operations and few, if any, assets to distribute.

On December 31, 2007, Icon commenced a civil action against non-debtors David A. Steinberg, Andrew Zeinfield and Kenneth D. Schwarz (collectively, the "Individual Defendants")[3] in the United States District Court for the District of Columbia, captioned *Icon International, Inc. v. David A. Steinberg, et al.*, Case No. 07-02342 (the "Icon Action") for activities which occurred pre-petition. Icon seeks money damages for alleged fraud and negligent misrepresentation arising out of the Individual Defendants' roles in the financing transaction. The Debtors are not named as defendants.

On February 15, 2008, the Debtors commenced this adversary proceeding (the "Adversary Proceeding") against Icon seeking (1) a declaratory judgment that Icon violated the automatic stay by prosecuting the Icon Action; and (2) an injunction against Icon's further prosecution of the Icon Action.

## FACTS

The facts which underlie the Motion are largely undisputed and are taken from the complaint in the Icon Action, can be found in public filings or are procedural in nature. Icon

---

[2] As a result of the sale, Debtors were required to discontinue the use of the name InPhonic, Inc. Accordingly, on January 30, 2008, this Court entered an Order authorizing Debtors' name change to SN Liquidation, Inc.

[3] As of the Petition Date, (1) Mr. Zeinfield was the President of the e-commerce unit of InPhonic; (2) Mr. Schwarz was the Chief Financial Officer of InPhonic; and (3) Mr. Steinberg was no longer affiliated with the Debtors, but served as the Chief Executive Officer of InPhonic at the time of the alleged wrongdoing.

and Debtors engaged in an arrangement before Debtors' bankruptcy whereby Icon provided Debtors with cash through a bartering of Debtors' excess inventory of cell phones for which Icon paid $4.0 million (allegedly in excess of liquidation or fair market value). In exchange, Debtors agreed to purchase media advertising from Icon guaranteeing a minimum cash return to Icon of $4,550,000, payable in two installments. The payment obligations could be reduced by the advertising on a percentage basis.[4] The Debtors defaulted and Icon brought an arbitration proceeding which resulted in a stipulated arbitration award against Debtors in the amount of approximately $5.0 million.

Icon alleges in the Icon Action that the Individual Defendants fraudulently misled Icon into advancing the $4.0 million while knowing full well that Debtors were on the verge of bankruptcy and did not have the financial ability to purchase advertising or to honor the indebtedness. Icon is also seeking punitive damages from the Individual Defendants.

In addition to the Icon Action, there are class action lawsuits pending against Debtors and the Individual Defendants asserting common law claims and violations of consumer protection statutes. The Judicial Panel on Multidistrict Litigation consolidated the cases in the United States District Court for the District of Columbia. See In re Inphonic, Inc., 460 F.Supp.2d 1380 (J.P.M.L. 2006) ("the Class Actions").

Debtors have three insurance policies which may provide coverage for the Icon Action and the Class Actions. The coverage totals approximately $35 million, after defense costs.

---

[4] The reduction of Debtors' indebtedness to Icon was at the rate of 20%. For every dollar of advertising Debtors placed, its indebtedness was reduced by $.20.

The Debtors' three insurance policies in effect during the time Icon's claims arose (the "Insurance") are as follows:

(1) AIG (Illinois National Insurance Company)
Limit of Liability: $10,000,000. Combined Coverage available to directors, officers and Debtors ("Primary Policy").

(2) CNA (Continental Casualty Company)
Limit of Liability: $10,000,000. Excess Coverage available to Debtors ("CNA Excess Policy").

(3) XL Specialty Insurance Company
Limit of Liability: $15,000,000. Second Payer of excess coverage available to directors and officers ("XL Excess Policy").

The Primary Policy contains two coverages. Coverage A protects any "insured person" (defined as an executive) except when and to the extent the "Organization" (i.e., Debtors) have indemnified the Insured Person. Coverage B protects the Debtors but only for securities claims. Coverage B also covers the Debtors for losses incurred from indemnifying an Insured Person. Clearly, the Primary Policy is property of the Debtors' estate. The excess policies follow form to the Primary Policy. The CNA Excess Policy is also property of the Debtors' estate. The XL Excess Policy is not property of the Debtors.

By letter, dated January 11, 2008, the Individual Defendants asserted indemnification claims against Debtors for their costs and expenses to defend themselves in the Icon Action. Debtors' by-laws provide for indemnification if the officer or director acted in good faith and in a manner reasonably believed to be in Debtors' best interest.

Before addressing the issue and the related issue of whether the automatic stay is implicated, the Court must address a procedural problem. Debtors are seeking a preliminary injunction without a verified complaint or a supporting affidavit. Rule 65 requires one or the other and the Motion is therefore technically deficient. *Bascom Food Products Corp. v. Reese Finer Foods, Inc.*, 715 F.Supp. 616, 623 (D.N.J. 1989). The Court will nonetheless decide the Motion on the merits. Although the Debtors did not present the Court with a factual record upon which to decide, let alone grant, the Motion, it is readily apparent that the relevant, master facts are undisputed and largely consist of public information, insurance policies and court filings. The Motion addresses and is limited to enforcement of the automatic stay, not the merits of the Icon Action. Moreover, the Court is satisfied that the absence of sworn evidence does not unduly prejudice Icon and the Court has minimized any prejudice by viewing the facts most favorably to Icon. The Court will therefore proceed to the merits of the Motion.

## DISCUSSION

### A. Insurance

The case presents a frequent issue the Court and other bankruptcy courts address: whether insurance is property of the estate. The answer in this case is that the Insurance is property of the Debtors' estate. Insurance policies purchased and paid for by a debtor are property of the estate. *See, e.g., ACandS, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252 (3d

Cir. 2006), *cert. denied*, 547 U.S. 1159 (2006); *Estate of Lellock v. Prudential Ins. Co. of Am.*, 811 F.2d 186, 189 (3d Cir. 1987).

Who owns the proceeds of an insurance policy presents a more complicated issue and requires a more careful analysis. Starting with the simplest situation, when an insurance policy provides coverage only to the debtor, courts almost uniformly hold that the proceeds are the property of the estate. *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 510-12 (Bankr. D. Del. 2004). Conversely, when an insurance policy provides coverage only to directors and officers, courts generally hold that the proceeds are not property of the estate. *Id. See also La. World Exposition, Inc. v. Fed. Ins. Co.* (*In re La. World Exposition, Inc.*), 832 F.2d 1391, 1399 (5th Cir. 1987); *In re Daisy Sys. Sec. Litig.*, 132 B.R. 752, 755 (N.D. Cal. 1991).

The issue of ownership becomes more complicated when the policy at issue provides coverage to both debtor, on the one hand, and its directors and officers on the other. If there is a risk that indemnity payments to directors and officers will result in insufficient coverage available to the debtor, then the proceeds are property of the estate. *Allied Digital*, 306 B.R. at 511.

The Court will adopt the analysis in *Allied Digital*:

> The Court concludes that when a debtor's liability insurance policy provides direct coverage to the debtor the proceeds are property of the estate, because the proceeds are payable to the debtor. Further when the liability insurance policy only provides direct coverage to the directors and officers the proceeds are not property of the estate. However, when there is coverage for the

> directors and officers and the debtor, the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution. Lastly, when the liability policy provides the debtor with indemnification coverage but indemnification either has not occurred, is hypothetical, or speculative, the proceeds are not property of the bankruptcy estate. That is the situation here.

306 B.R. at 512. Unlike the situation in *Allied Digital*, indemnification is not merely speculative in this case, but the defendants have made a formal request for indemnification.[5]

The Primary Policy is clearly in the nature of estate property providing coverage for directors and officers as well as for the Debtors. Depletion of insurance proceeds which results from indemnification for defense costs would adversely affect the Debtors' estate.

B. Automatic Stay

Section 362(a) of the Bankruptcy Code prohibits a party from commencing or continuing actions or proceedings against a debtor, or taking any action which might result in possession or control of a debtor's property. *See AC and S, Inc.*, 435 F.3d 260. It is, as its title suggests, "automatic." Here, the Icon Action names only the Individual Defendants and not the Debtors. The Icon Action does, however, threaten the Debtors' property, i.e., the Primary Policy. Although the automatic stay affords protection only to debtors, not non-debtor defendants, courts have often extended protection to non-debtor defendants who were

---

[5] The Court is aware that under Delaware law, 8 Del.C. § 145, fraud may vitiate indemnification obligations. For the present, the Court cannot assume Icon will establish fraud and therefore cannot assume that Debtors do not have indemnification obligations, the same conclusion the Court reached in *Am. Film Techs. v. Taritero (In re Am. Film Techs.)*, 175 B.R. at 847, 851 (Bankr. D. Del. 1994).

officers or directors of the debtors. The rationale for such decisions is that a finding of liability against management defendants could have a preclusive effect, as collateral estoppel, against the debtors. The Court in *American Film Technologies*, enjoined an action against non-debtor defendants on the basis of collateral estoppel, concluding that:

> because of the identity of subject matter, issues and parties involved, the California case squarely implicates AFT's indemnification obligations and exposes it to collateral estoppel prejudice if it does not participate in that case. This conclusion justifies the invocation of Code § 105 to issue a preliminary injunction order staying Taritero prosecution of the California case in order to make effective the automatic stay of Code § 362(a).

175 B.R. at 855. Icon filed a proof of claim in the bankruptcy case for the full amount of its alleged losses. Therefore, the collateral estoppel concerns which Judge Walsh raised in *American Film Technologies* are equally applicable here, since facts developed in the Icon Action could be used in the resolution of the Icon Proof of Claim. The preclusive effect means the Debtors might be imperilled by findings in the Icon Action and would be compelled to participate in the discovery and the litigation regarding the Icon Proof of Claim.

A more compelling reason for finding that the automatic stay applies relates to a critical tenet of bankruptcy, namely, a stay protects creditors from more diligent creditors and facilitates the equitable treatment of creditors. *Mar. Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204-05 (3d Cir. 1991). The Court expects the Debtors to treat all litigants equitably and that is not possible if one litigant, i.e., Icon, proceeds with its lawsuit and as a result the Insurance is diminished while other litigants honor the stay.

Preliminary Injunction

Having concluded that the Insurance is property of the estate and that Icon has violated the automatic stay, the analysis turns to whether or not the Court should enjoin further prosecution of the Icon Action for Icon's violating the automatic stay of 11 U.S.C. § 362. The Court must consider the following factors in deciding whether to grant a preliminary injunction: (1) likelihood that the plaintiff will prevail on the merits, (2) the extent of irreparable harm to Debtors, (3) the harm to Icon if the injunction is granted and (4) the public interest. Debtors meet each of the requisite factors. Debtors' right to fashion an orderly liquidation may be jeopardized without enjoining Icon from proceeding with the Icon Action. *American Film Technologies*, 175 B.R. at 849-50. The Court will issue the injunction.

The automatic stay clearly applies and the Court will enforce it and enjoin the violation of the stay. At the same time, because the evidentiary record is thin, the Court is granting the Motion with more reluctance than usual. As Judge Walsh observed in *American Film Technologies*, "[t]he automatic stay is not a permanent bar." 175 B.R. at 855. The Court's ruling is therefore without prejudice to Icon seeking relief from the automatic stay.

**CONCLUSION**

Where, as here, there are finite insurance proceeds available to multiple litigation claimants, one of the salutary benefits the automatic stay affords is preventing a litigant from gaining any advantage by having its case heard first or compelling an early settlement. In *American Film Technologies*, the Court suggested that "this Chapter [11] case may be approaching the point where [debtor's] liabilities, if any, arising out of the [ ] causes of action should be determined." 175 B.R. 855. Here, the Debtors have sold all of their assets and are no longer operating. As well, they are, or should be, fully informed of what litigation is pending against them which may require coverage under the Insurance. Accordingly, the Court will hold a status conference at the omnibus hearing scheduled for July 15, 2008, at which Debtors are to report on their plan for addressing the Icon Action *vis-a-vis* the Class Actions. The Court is concerned that although litigations which may all constitute claims against the Insurance must be treated fairly and equitably given the limitations on coverage, they should not be placed in limbo any longer than necessary. Now that Debtors have ceased their business and operations, the Debtors must address the Icon Action and the Class Actions and their plans for resolving them. The Court has issued an Order which accompanies this Opinion.

Dated: June 2, 2008

KEVIN GROSS, U.S.B.J.